```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

DIEBOLD, INC.,                    :
                                  :
          Plaintiff,              :   HONORABLE JOSEPH E. IRENAS
                                  :   CIVIL ACTION NO. 07-1991 (JEI)
     v.                           :
                                  :           OPINION
CONTINENTAL CASUALTY CO.,         :
                                  :
          Defendant.              :
```

**APPEARANCES:**

ANDERSON KILL & OLICK, P.C.
By:  John N. Ellison, Esq.
     Luke E. Debevec, Esq.
1600 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
          Counsel for Plaintiff

CLAUSEN MILLER, P.C.
By:  Christopher Scanlon, Esq.
     Scott L. Schmookler, Esq.
One Chase Manhattan Plaza, 39th Floor
New York, New York 10005

and

COLLIAU ELENIUS MURPHY CARLUCCIO KEENER & MORROW
By:  Edward Delesky, Esq.
1249 South River Road, Suite 300A
Cranbury, New Jersey 08512
          Counsel for Defendant


**IRENAS**, Senior District Judge:

This matter comes before the Court on the Motion for Reconsideration by Defendant, Continental Casualty Company ("Continental"). Continental asks this Court to reconsider the portion of its previous decision wherein the Court concluded that the suit limitation clause contained in the insurance policy at

issue was tolled, thereby rendering this suit by the insured Plaintiff Diebold, Inc. ("Diebold") timely.  Continental argues that under Illinois law, the time for filing a proof of loss was not tolled, and therefore Counts 1-5 of the Amended Complaint should have been dismissed.  Because the Court concludes that New Jersey law applies, the Motion for Reconsideration will be denied.

### I.

The facts relevant to Continental's Motion to Dismiss, and by logical extension, this Motion for Reconsideration, are recounted in this Court's opinion at *Diebold, Inc. v. Continental Casualty Co.*, No. 07-1991, 2008 WL 1372948 at *1-2 (D.N.J. April 10, 2008).

### II.

A motion for reconsideration may only be granted on the ground that (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) that vacating the Order is necessary to correct a clear error of law or manifest injustice.  *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

### III.

Continental argues that this Court made a clear error of law

when it implicitly held that the "Commercial Crime Policy" at issue was not a "fidelity and surety" policy, as that term is used in 215 ILCS 5 / 143.1.  With respect to tolling of a suit limitations clause, that statute provides,

> Whenever any policy or contract for insurance *except* life, accident and health, *fidelity and surety*, and ocean marine policies contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part.

Neither the statute, nor case law, define "fidelity and surety" as it is used above.

Even if the Court assumes, however, that the commercial crime policy is a "fidelity and surety" policy that is not subject to tolling under the statute, Continental is not necessarily entitled to a dismissal of the claims at issue.  In its previous opinion, the Court expressly did not decide which law should govern (Illinois or New Jersey[1]), finding that there was no material difference between New Jersey law and Illinois law with respect to the issues raised by the Motion to Dismiss. *See Diebold, Inc.*, 2008 WL 1372948 at *3 ("New Jersey law and Illinois law do not materially differ with respect to the legal issues presented in the present Motion.  Accordingly, the Court

---

[1] Continental had suggested in its original Motion to Dismiss that Ohio law might apply.  However, the Court ruled-out that option, *see Diebold,* 2008 WL 1372948 at *3 n.6, and neither party seeks reconsideration of that issue.

need not decide the choice of law question at this stage of the litigation.").[2]  Assuming that the commercial crime policy is a fidelity and surety policy under 215 ILCS 5 / 143.1, then a true conflict exists between Illinois and New Jersey law because New Jersey law provides for tolling of all suit limitations clauses without exception.  *See Azze v. Hanover Ins.*, 336 N.J. Super. 630, 637 (App. Div. 2001), and other cases cited in *Diebold, Inc.*, 2008 WL 1372948 at *3.  Faced with a true conflict, the Court must engage in a choice-of-law analysis and then apply the chosen law to determine whether Continental is entitled to an order vacating this Court's decision denying Continental's Motion to Dismiss Counts 1 through 5 of the Amended Complaint.

**A.**

Applying New Jersey choice of law rules,[3] the Court concludes that New Jersey law applies.

> [C]hoice-of-law determinations in interpreting casualty-insurance contracts should be made by looking first to section 193 of the Restatement (Second) of Conflict of Laws (1971) [which] provides that the law of the principal location of the risk

---

[2] Neither side cited the Illinois statute in their briefs. Continental cited Illinois case law for the proposition that Illinois law strictly enforces contractual suit limitations without referencing 215 ILCS 5 / 143.1.  Diebold asserted that New Jersey law applied, but alternatively argued that even if Illinois law applied, Continental had waived the suit limitation clause, relying on an Illinois case from 1897.

[3] *See Diebold,* 2008 WL 1372948 at *3 (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)).

4

> governs unless another state has a more significant relationship to the parties and the transaction under the principles stated in Restatement section 6.

*Pfizer Inc. v. Employers Insurance of Wausau et al.,* 154 N.J. 187, 190 (1998). Specifically, in undertaking the choice-of-law analysis, "the place that 'the parties understood . . . to be the principal location of the insured risk governs unless some other state has a more significant relationship.'" *Id.* at 194-95 (quoting Restatement). To determine whether some other state has a more significant relationship, the Court examines "the competing interests of the relevant states, the national interests of commerce among the several states, the interests of the parties / interests underlying the contract law, and the interests of judicial administration." *Id.* at 198 (citing Restatement § 6).

As to the first inquiry-- the parties' understanding as to the principal location of the insured risk-- the only information before the Court is the commercial crime policy itself, which indicates that the coverage territory is "worldwide." Moreover, the nature of Diebold's business is somewhat transient in the sense that it services various ATM machines through the use of various armored car subcontractors.[4] In other words, there may

---

[4] *Cf. Pfizer,* 154 N.J. at 195-97 (stating that "when such an insured operation or activity is predictably multistate" or, in other words, when "the risks insured . . . were to some degree transient," "the significance of the principal location of the insured risk diminishes" and an analysis of the section 6 factors

5

not be a "principal location of the insured risk" in this case, and in any event, nothing before the Court indicates that the principal location of the risk, if there was one, was either New Jersey or Illinois. Accordingly, the Court must proceed to the section 6 factors.

*The competing interests of the states*

New Jersey has a stronger interest than Illinois in having its law apply to the tolling of the suit limitation clause. "'If a state's contacts with the transaction are not related to the policies underlying its law, then the state does not possess any interest in having its law apply.'" *Pfizer*, 154 N.J. at 198 (quoting *Veazey v. Doremus,* 103 N.J. 244, 248 (1986)). Here, Illinois is only the place of contracting, and Continental fails to explain how that contact has any relation to the policy underlying 215 ILCS 5 / 143.1.[5] The statute is intended to be a "consumer protection" law, preventing prejudice to the insured when an insurance company receives a proof of loss but "sits on" the claim until the contractual suit limitation period has

---

is warranted).

[5] Indeed, Continental argues that the place of contracting controls, without regard to any other factors. However, as *Pfizer* and numerous other cases have said, "'New Jersey [has] long-rejected the mechanical and inflexible *lex loci contractus* rule in resolving conflict-of-law issues in liability-insurance contracts.'" 154 N.J. at 192 (quoting *Gilbert Spruance Co. v. Pa. Mfg. Ass'n Ins. Co.*, 134 N.J. 96, 102 (1993)).

expired. *Trinity Bible Baptist Church v. Federal Kemper Ins. Co.*, 578 N.E.2d 1375, 1377-78 (Ill. App. 1991).  While this Court's research has uncovered no authority suggesting the policy underlying the statute's exclusion of fidelity and surety policies from tolling, the exclusion necessarily implicates the relationship between the insured and the insurer, neither of which in this case, are domiciled in Illinois.

The policy underlying New Jersey's law is quite similar to Illinois, in that New Jersey's law also reflects a concern for protecting the insured from the prejudice that could result from the time consumed by an insurance company's investigation of a claim.  *See Peloso v. Hartford Fire Ins. Co.,* 56 N.J. 514, 521 (1970) ("the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay").  It, too, generally implicates the relationship between the insured and the insurer, neither of which are domiciled in New Jersey.  However, Diebold (the insured) does have a connection with New Jersey in that it is seeking indemnification for payments it made to New Jersey banks[6]

---

[6] The losses were not isolated to only New Jersey but nothing in the record before the Court, nor the facts found by the Bankruptcy Court in *In re: Tri-State Armored Servs., Inc.* 332 B.R. 690 (2005), suggest that any Illinois banks suffered losses. *See In re: Tri-State*, 332 B.R. at 697, 703 ("Tri-State operated in various states, including New Jersey, Pennsylvania, Maryland, Virginia, and Connecticut;" losses were found at the First Union ATM at the Newark, New Jersey, Airport; the Heartland Bank at the

for money that a now-bankrupt New Jersey company stole.[7]  To the extent that applying New Jersey law helps to facilitate, albeit somewhat indirectly, compensation of New Jersey victims, New Jersey has a greater interest in having its law apply, than Illinois has in having its law apply.

*The interests of commerce among the states*

Illinois law can "be disregarded without offense to its purposes" in this case.  *Pfizer*, 154 N.J. at 198.  As discussed *supra*, 215 ILCS 5 / 143.1 addresses the relationship between the insured and the insurer with regard to the processing of claims and when an insured may file suit against the insurer.  Because Illinois has no direct or indirect relationship to either the insured or the insurer, the policy underlying its exclusion of fidelity and surety policies from tolling will not be frustrated by applying New Jersey law.

*The interests of the parties*

---

Garden State Mall in Paramus, New Jersey; and the First Union ATM in Limerick, Pennsylvania).

[7]  *See In re: Tri-State* 332 B.R. at 699 (Tri-State's administrative headquarters was located in Hammonton, New Jersey, and Tri-State filed a Chapter 7 petition in the bankruptcy court for the District of New Jersey).  Also, four of the five guilty Tri-State employees were prosecuted in this district before Chief Judge Brown. *See U.S. v. Feuker,* No. 01-cr-162 (D.N.J.); *U.S. v. Mottin*, No. 01-cr-572 (D.N.J.); *U.S. v. Fernandez*, No. 01-cr-641; *U.S. v. Basile*, No. 02-007 (D.N.J.).

This factor requires the court to consider Diebold's and Continental's "justified expectations" and "needs for predictability of result." *Pfizer*, 154 N.J. at 199. Continental correctly argues that applying the law of the place of contract (Illinois law), which is necessarily set at the time the contract is executed, would further the parties' interests in predictability. However, as the New Jersey Supreme Court has observed with respect to this factor of the choice-of-law analysis,

> unpredictability lies in the nature of insurance contracts. Predictability appears to be a minor virtue in the willingness of insurers who issue [] policies that will be subject to the unpredictable substantive law of many states fixing the liabilities of their insureds. It is likely that the parties could have contracted for more predictable results had they inserted choice-of-law provisions in the insurance contracts. . . . [I]n the absence of a choice-of-law provision, a policyholder would expect that it would be indemnified under the law in effect at the place where the liability is imposed.

*Pfizer*, 154 N.J. at 203 (internal quotations and citations omitted). Obviously, there is no choice-of-law provision in the commercial crime policy. The liability was imposed in New Jersey, where the money was stolen. Accordingly, Diebold has a justified expectation in having New Jersey law apply.

*Concerns of judicial administration*

"[T]he fair, just, and timely disposition of controversies

within the available resources of the courts will be fostered" by applying either New Jersey or Illinois law.  *Pfizer*, 154 N.J. 198.  However, the other factors favor New Jersey law.  Accordingly, the Court holds that New Jersey's law applies to the tolling the suit limitation clause contained in the commercial crime policy.

**B.**

This Court previously stated New Jersey law with respect to tolling: "New Jersey law provides that the [contractual period in which to sue] is tolled between the time the insured gives notice of loss and the time the insurance company formally denies coverage."  *Diebold,* 2008 WL 1372948 at *3 (internal quotations and citations omitted).  The parties do not take issue with this Court's determination of New Jersey law, which, unlike Illinois, apparently does not exclude any particular type of liability insurance contract from tolling.[8]  Accordingly, this Court holds that under New Jersey law,

> the allegations of the Amended Complaint are sufficient to support the conclusion that the policy's limitation period was tolled, and this suit is timely.  Diebold asserts that it submitted a statement of claim in March, 2003, and that Continental "has not yet even advised Diebold of its

---

[8] New Jersey's law with respect to tolling has been developed in the common law, as opposed to statute.  This Court has found no case suggesting that the tolling rule found in the case law has any exceptions.

> coverage position for the loss as of the date of this Complaint." (Amend. Compl. ¶ 67). Thus, based on the allegations of the Amended Complaint, it appears that Continental has not yet formally denied coverage; therefore, the time in which to sue was tolled from March 2003 until the present.

*Diebold,* 2008 WL 1372948 at *4. Because New Jersey law applies to toll the contractual suit limitation clause in the commercial crime policy, Counts 1 through 5 of the Amended Complaint will not be dismissed, and Continental's Motion for Reconsideration will be denied.

**IV.**

For the reasons stated above, Continental's Motion For Reconsideration will be denied. The Court will issue an appropriate order.

Date: July 2, 2008

                     s/ Joseph E. Irenas
                     JOSEPH E. IRENAS, S.U.S.D.J.